IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEITH KRUTCHEN, ANGEL D. MURATALLA, and WILLIAM BEGANI, individually and on behalf of all others similarly situated, | : : : : : | CIVIL ACTION<br><br>No. 22-678 |
| v. | : : | |
| RICOH USA, INC., THE BOARD OF DIRECTORS OF RICOH USA, INC., THE RICOH RETIREMENT PLANS COMMITTEE and JOHN DOES 1-30. | : : : : | |

## MEMORANDUM

**Juan R. Sánchez, C.J.**                                                    **November 15, 2022**

In this class action brought under the Employee Retirement Income Security Act ("ERISA"), Plaintiffs Keith Krutchen, Angel D. Muratalla, and William Begani (collectively "Plaintiffs") assert claims of breach of fiduciary duty against Defendants Ricoh USA, Inc., the Board of Directors of Ricoh USA, Inc., the Ricoh Retirement Plans Committee, and John Does 1-30 ("Defendants"). Defendants move to dismiss Plaintiffs' Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Because the Amended Complaint fails to provide a reasonable inference that Defendants breached their fiduciary duty, the motion will be granted with leave to amend.

## FACTS

Plaintiffs are former employees of Ricoh USA, Inc. who participated in the company's Retirement Savings Plan ("the Plan"), an employer-sponsored defined contribution plan within the meaning of ERISA, 29 U.S.C. § 1002(34). Am. Compl. ¶¶ 17-19. A "defined contribution plan" or "individual account plan" provides for individual retirement accounts for each participant; the plan's value is derived from the amounts contributed to those accounts and the accounts'

performance. *Id.* ¶ 40. Ricoh, the Plan's sponsor and fiduciary, appointed the Ricoh Retirement Plans Committee ("the Committee") to monitor investment performance and costs each year. *Id.* ¶¶ 22-23. The Committee's tasks included ensuring the Plan paid fair recordkeeping and administration fees and confirming investments were appropriate, reasonably priced, and well-performing. *Id.* ¶ 23.

Recordkeeping services are generally provided as a "bundle" for a per-capita price, after which fiduciaries can select additional individual services "a la carte." *Id.* ¶¶ 65-67. Recordkeepers offer bundled services like transaction processing and participant communications for one price, regardless of whether a plan makes use of all or only some of the services. *Id.* (describing this type of service provision as "all-you-can-eat"). A la carte services like loan processing, on the other hand, are each added for an additional cost. *Id.* ¶ 67.

Plaintiffs allege Defendants' method of paying for  recordkeeping "severely reduced the participants earning potential," resulting in millions of dollars in losses. *Id.* ¶¶ 76, 90-91. Further, they claim Defendants had "substantial bargaining power" when negotiating fees and expenses due to the Plan's size, but they failed to leverage that power to lower its fees. *Id.* ¶ 10. Recordkeeping expenses can be paid either directly by plan participants or indirectly by a plan's investments, a practice also known as "revenue sharing." *Id.* ¶ 71. Here, the Plan paid Hewiett Associates for recordkeeping services directly, then added an 0.09% administration fee to every investment option to recoup the money from those payments, as well as those for "trustee, legal, . . . and accounting services." *Id.* ¶¶ 69, 72.[1] Further, two of the investment options available to Ricoh employees—the Dodge and Cox International Stock Fund and the T. Rowe Equity  Income Fund—used revenue sharing in addition to the 0.09% fee. *Id.* ¶ 72. For those funds, the total

---

[1] Hewiett was acquired by Alight in 2017. Am. Compl. ¶ 78 n.10.

recordkeeping fees were 0.19% and 0.24%, respectively. *Id.* The annual per-participant recordkeeping charge for the Plan ranged from a low of $61 to a high of $103, with fees increasing as assets grew and the number of participants declined. *Id.* ¶ 80.

To show that the Plan's fees were excessive, Plaintiffs compare its recordkeeping payments to those of other plans. *Id.* ¶ 84. The Amended Complaint includes information about the fees of twelve comparator plans in 2019, with costs ranging from $23 to $36 as reported on those plans' 2018 Form 5500s.[2] *Id.* ¶ 85. All of these "benchmark" plans had at least 13,000 participants and $300 million in assets, but only one used the same recordkeeper as Defendants. *Id.* Plaintiffs also provide data from other comparator plans from 2013-2018, as well as case law and a survey from consultant group NEPC to support its allegations. *Id.* ¶¶ 86-89.

Pursuant to 29 U.S.C. §§ 1109 and 1132, Plaintiffs, on behalf of themselves, the Plan, and a putative class of similarly-situated Plan participants, brought this action against Ricoh, the Committee, and its Board. *Id.* ¶¶ 25-32. Plaintiffs also name "John Does No. 1-30" as Ricoh's individual Board members, Committee members, and any unknown fiduciaries of the Plan. *Id.* Plaintiffs allege: (1) the Committee breached its fiduciary duty by failing to control the Plan's recordkeeping administration costs; and (2) Ricoh and its Board breached their fiduciary duties by failing to monitor the Committee. *Id.* ¶ 13. Defendants now move to dismiss both claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

**STANDARD OF REVIEW**

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient

---

[2] ERISA requires 401(k) plans to file an annual report, called a Form 5500, to the Department of Labor and the Department of the Treasury. Am. Compl. ¶ 65 n.8. This form reports the plan recordkeeper and the amount paid for their services, but not which services are selected. *See, e.g.*, Ricoh's Form 5500s at 8, ECF No. 18-2.

factual matter, accepted as true, to state a claim that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint "does not need detailed factual allegations" but it must contain something "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But the plausibility standard "require[s] a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citation omitted). "A facially plausible claim is one that permits a reasonable inference that the defendant is liable for the misconduct alleged." *Doe v. Univ. of the Scis.*, 961 F.3d 203, 208 (3d Cir. 2020) (citing *Iqbal*, 556 U.S. at 678). This Court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." *Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989).

**DISCUSSION**

Taking all facts in the Amended Complaint as true and deciding all inferences in their favor, Plaintiffs fail to plausibly allege the Committee breached its ERISA-imposed fiduciary duty by charging unreasonable recordkeeping fees. Plaintiffs also do not state a failure to monitor claim against Ricoh and the Board, since this second claim is derivative of the first. Accordingly, Defendants' motion to dismiss will be granted.

A breach of fiduciary duty under ERISA occurs when "(1) a plan fiduciary (2) breaches an ERISA-imposed duty (3) causing a loss to the plan." *Sweda v. Univ. of Pa.*, 923 F.3d 320, 328 (3d Cir. 2019) (quoting *Leckey v. Stefano*, 501 F.3d 212, 225-26 (3d. Cir. 2007)). Plaintiffs only contest the second element: whether the Committee breached its duty of prudence in managing the Plan. A fiduciary must exercise "the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in

the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). At the pleading stage, a plaintiff must show "substantial circumstantial evidence" for the court to "reasonably infer" that the conduct was imprudent. *Sweda*, 923 F.2d at 332 (internal quotation omitted). Such evidence may include the "range of investment options," "reasonableness of fees," "selection and retention of investment options," and "practices of similarly situated fiduciaries." *Id*. at 331.

Mismanagement of plan expenses—like overcharging for recordkeeping and administrative fees—constitutes a breach of fiduciary duty because unreasonable expenses can "significantly reduce the value of an account in a defined-contribution plan." *Id.* at 328; *see also* 29 U.S.C. § 1104(a)(1)(A) (requiring fiduciaries to "defray" reasonable expenses of plan administration). For example, in *Sweda,* the plaintiffs alleged their employer breached its fiduciary duty by paying excessive administrative and recordkeeping fees, compared to plans that paid less for the same services. *Sweda*, 923 F.3d at 330-31. In dismissing the defendants' 12(b)(6) motion, the Third Circuit held that the plaintiffs plausibly alleged a breach where they used "specific comparisons" between the plan's choices and available alternatives and showed that the "practices of similarly situated fiduciaries" differed from the allegedly imprudent plan. *Id.* at 332.

In assessing mismanagement of recordkeeping expenses after *Sweda*, courts in this circuit have found relevant whether the plan engaged in competitive bidding for recordkeeping services, the plan's ability to leverage its size to reduce fees, how many recordkeepers the plan pays, and if the complaint includes "a sound basis for comparison [or] meaningful benchmark" to create an inference of imprudence. *Pinnell v. Teva Pharma. USA, Inc.*, Civ. No. 19-5738, 2020 WL 1531870, at *4 (E.D. Pa. Mar. 31, 2020) (internal quotation omitted). A meaningful benchmark must include both the quality and type of recordkeeping services provided by comparator plans to

show that identically situated plans received the same services for less. *Mator v. Wesco Distrib., Inc.*, Civ. No. 21-403, 2022 WL 3566108, at *7 (W.D. Pa. Aug. 18, 2022). In *Mator*, the plaintiffs alleged the defendants' plan charged excessive recordkeeping fees, comparing its fees to those of six other plans, with all facts derived from Form 5500s. *Id.* at *2. The court dismissed the claim, holding that the plaintiffs' failure to "address the types or levels of services that any plan contracted to receive" made the benchmark an "apples to oranges comparison." *Id.* at *7; *see also id.* at *4 (noting Form 5500 codes do not "capture all the details, nuances, and scope of different services"). The court reasoned that a "price tag to price tag comparison" without sufficient details regarding services was "too generalized and speculative" to state a claim. *Id.* at *8. Otherwise, "ERISA plaintiffs could advance litigation on a mere averment of a monetary difference." *Id.*

As in *Mator*, Plaintiffs' Amended Complaint fails to include any information about the specific services used by Defendants' Plan or the benchmark plans. Plaintiffs actually plead fewer facts than the plaintiff in *Mator*: the Amended Complaint lists the services that "all national recordkeepers have the capability to provide," but only notes that the Plan's selected services "fell within the broad range" of those available. Am. Compl. ¶ 69. Plaintiffs similarly allege nothing about the services chosen by the benchmark plans, the plans included in the NEPC survey, or those under review in their cited case law. Fiduciaries may select diverse services from bundled offerings or elect additional ala carte services, prioritizing various options differently depending on their plans' unique needs and reasonably choosing to pay more for higher quality services. Without this "apples to apples" information, this Court cannot assess whether the Plan even pays for the same services as its comparators, much less what "similarly situated fiduciaries" would do. *Sweda*, 923 F.3d at 330. In addition to following this Circuit's precedent in *Sweda*, this Court finds support in several other circuits. *See Albert v. Oshkosh Corp.*, 47 F.4th 570, 580 (7th Cir. 2022); *Smith v.*

6

*CommonSpirit Health*, 37 F.4th 1160, 1169 (5th Cir. 2022); *Young v. Gen. Motors Inv. Mgmt. Corp.*, 325 F. App'x 31, 33 (2d Cir. 2009); *see also Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 280 (8th Cir. 2022) (rejecting the NEPC survey as a benchmark because it did not show which services were selected by the survey's plans).

Since Count I does not state a claim, neither does Count II. A failure to monitor claim cannot survive without an underlying breach of an ERISA-imposed duty. *In Re Allergan Erisa Litig.*, 975 F.3d 348, 354 n.11 (3d Cir. 2020). Plaintiffs do not plausibly allege a breach of fiduciary duty, so they do not plausibly allege a failure to monitor.

Because the Amended Complaint does not provide meaningful benchmarks by which the Court can assess the prudency of Defendants' actions, the motion to dismiss will be granted with leave to amend.

An appropriate Order follows.

BY THE COURT:

 /s/  Juan R. Sánchez
Juan R. Sánchez, C.J.